UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY POINDEXTER, #253929,

    Petitioner,

CIVIL CASE NO. 04-40029

HONORABLE STEPHEN J. MURPHY, III

v.

PAUL RENICO,

    Respondent.

_____/

## OPINION & ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

    Petitioner, Gregory Poindexter, is a state inmate currently incarcerated at Kinross Correctional Facility in Kincheloe, Michigan. Petitioner was convicted at the conclusion of a Wayne County Circuit Court jury trial of first-degree premeditated murder, Mich. Comp. Laws § 750.316; the lesser included charge of second-degree murder, Mich. Comp. Laws § 750.317; and felony firearm, Mich. Comp. Laws § 750.227b. Petitioner was sentenced to mandatory life in prison without parole for the first-degree murder conviction and a consecutive two year term of imprisonment for the felony firearm conviction. Petitioner was also sentenced to life imprisonment for the second-degree murder conviction; however, the conviction and sentence were immediately vacated by the trial court. Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court will deny the petition.

## BACKGROUND

    The state appellate court in this case set forth underlying facts, which are presumed

correct on habeas review, *see Monroe v. Smith*, 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd*. 41 Fed. App'x. 730 (6th Cir. 2002), as follows:

> The victim and her three-year-old daughter had been living with the victim's sister, Lisa Summerville, for about a year before the shooting. According to Lisa Summerville, the victim had dated Poindexter for about two years. Their relationship ended around May 25, 1996, because, as the victim reportedly told her, Poindexter had assaulted the victim violently and had thrown her down stairs, ultimately requiring her to have five stitches to close a wound on her head . . .
>
> * * *
>
> . . . [O]n the night of the shooting . . . [s]ometime after midnight, Lisa Summerville "was awakened by two gunshots and a scream." She got up and went part way down the stairs. Lisa Summerville called out a number of times to her sister, never receiving a response. Then she saw a "shadow" from under the door to her sister's room. Lisa Summerville called out to her sister again, but still heard no response, so she returned to her room and retrieved a .38 caliber revolver her boyfriend, a Detroit police officer, had given her. She went to the telephone to call 911, but the line was dead, so she ran to the window and "started screaming out of the window for help for someone to call the police."
>
> Suddenly, Lisa Summerville said, the door to the stairway leading to her room opened and someone turned on and off the stairway light. She turned on the light from a switch in her room, looked down, and saw a hand in a white latex glove lightly spattered with blood reaching for the light switch. "And then the next thing that happens is I see Mr. Poindexter . . . He turned and looked right up at me and I looked right down into his face." Fearing that Poindexter might shoot her, Lisa Summerville fired a shot at him. She testified that Poindexter, who had started up the stairway, "ran back down the stairs" and then she "heard him go into [the victim's] bedroom . . . and fire two more shots." She heard "the alarm go off on the front door," ran back to the window, and again called for help. A neighbor came over and said that she had called the police.

*People v. Poindexter,* No. 202456, 2002 WL 194794 (Mich. Ct. App. Jan. 29, 2002).

Petitioner filed an appeal of right and raised the following issues:

> I. The trial judge in the instant case infringed defendant's due process right to a fair trial when he refused to grant defense counsel's request to declare a hung jury on count one, where the jury in the instant case deliberated for nearly three days, requested reinstruction twice, and announced that it was deadlocked on three occasions, finally telling the trial judge "nothing further

> can be resolved in the jury room."
>
> II. Mr. Poindexter was denied his federal constitutional right to a fair trial and his right of confrontation when the prosecutor deliberately introduced inadmissible hearsay testimony to establish the existence of a prior violent assault allegedly committed by defendant on the victim.

Petitioner subsequently filed a supplemental brief on direct appeal raising four additional claims:

> I.   Defendant is entitled to a new trial, because his right to effective assistance of counsel was violated, to his substantial prejudice; given the cumulative effect of counsel's errors and omissions; resulting in an unreliable and fundamentally unfair outcome of the trial, under both federal and state constitutions.
>
> II.   The trial court did impermissibly instruct, and the jury did return, inconsistent ambiguous verdicts; having returned a verdict of guilt on count I (1st degree premeditated murder), and count II (lesser offense of felony-murder, "second-degree" murder), in addition to guilt of count III (felony-firearm), where there was but one victim and murder, on[ ]e continuous criminal episode; the trial court having failed to cure the constitutional violation, when sentencing a to natural life on count I, life on count II, and the "arbitrarily" vacating the sentence on count II, over defense counsel's objection, and imposing an additional consecutive two year term, on count III (felony-firearm); all in violation of defendant's due process and double jeopardy rights, under both federal and state constitutions.
>
>> A.  The first-degree murder charge was unsupported by proofs.
>>
>> B.  Reversal for a new trial is required, where the trial judge had knowledge of [constructive inquiry] into the numerical division of the jury on count I, and continued to send jury back for deliberations until the majority overcame the lone dissenting juror.
>>
>> C.  Ineffective assistance of counsel.
>
> III.  Defendant-appellant was prejudiced by the district court magistrate's failure to dismiss the prosecution's case or the lack of probable cause and its evidence.
>
> IV. The trial judge was instrumentally biased and the unprofessional conduct of trial judge who breached the mantle of impartiality and denied defendant's

due process rights.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *Poindexter*, 2002 WL 194794, at *7.

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the following claims:

> I. The Court of Appeals abused it [sic] discretion by failing to make an appropriate ruling on a first impression case. Defendant [sic] argument I that the trial court improperly coerced the jury into finding him guilty of first-degree murder by requiring the jury to continue its deliberation after it had announced several times that it was deadlocked. (Application for Leave to Appeal, para 6).
>
> II. Defendant contends that the Court of Appeals failed to make an accurate determination of the prosecutor misconduct when it deliberately elicited testimony that the victim was assaulted by defendant [a] month before her death by defendant (Application for Leave to Appeal, para 7).
>
> III. Court of Appeals failed to considered [sic] essential facts which derived from the Ginther hearing (Application for Leae to Appeal, para 8).
>
> IV. The improperly [sic] jury instruction is [a] result of the jury being deadlocked. (Application for Leave to Appeal, para 9).
>
> V. The Court of Appeals held that the double jeopardy claim of being found guilty of both first-degree/second degree murder does not constitutes [sic] a double jeopardy. (Application for Leave to Appeal, para 10).
>
> VI. Appellant challenge [sic] that the evidence was insufficient to support the conviction of first-degree murder and second-degree murder (Application for Leave to Appeal, para 11).

Petitioner's application for leave to appeal was denied. *People v. Poindexter*, 467 Mich. 882; 672 NW2d 858 (2002) (table).

Petitioner filed a *pro se* petition for writ of habeas on January 29, 2004 raising the following issues:

> I. Petitioner Poindexter was denied his federal constitutional right to a fair

> trial and his right of confrontation, when the prosecutor deliberately introduced inadmissible hearsay testimony to establish the existence of a prior violent assault allegedly committed by petitioner on the victim.
>
> II. Petitioner's federal constitutional right to due process of law was violated where the prosecution knowingly and intentionally presented false evidence respecting the source of "gun shot residue."

On September 7, 2004, Petitioner filed a motion to stay the habeas proceedings in order to exhaust Claim II in the state courts. The Court granted Petitioner's motion on September 30, 2005. Petitioner filed a motion for relief from judgment with the Wayne County Circuit Court, which was denied. He then appealed the trial court ruling to the Michigan Court of Appeals by filing an application for leave to appeal which was denied. *People v. Poindexter*, No. 273792 (Mich. Ct. App. May 8, 2007). Petitioner filed an application for leave to appeal the decision of the Michigan Court of Appeals with the Michigan Supreme Court and relief was denied because "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Poindexter*, 480 Mich. 922; 740 NW2d 288 (2007).

On January 2, 2008, the Court re-opened Petitioner's case. Petitioner then filed a motion to amend his habeas petition along with an amended petition. Petitioner now seeks habeas relief on the following grounds:

> I. The trial judge in the instant case infringed upon Petitioner's due process right to a fair trial by refusing to grant trial counsel's request declaring a hung jury on count one. Petitioner's jury deliberated for three days, then petitioner requested a reinstruction twice, prior to the jury deadlock on three occasions following a final conclusion by the jury to the trial court that "nothing further can be resolved by the jury."
>
> II. Was petitioner denied his federal constitutional right to a fair trial and confrontation right, when the prosecutor deliberately introduced inadmissible hearsay testimony for establishing the existence of prior, violent assault allegedly committed by petitioner on the victim?

5

III. Was trial counsel's performance ineffective, thus, causing substantial prejudice to petitioner's right to fair trial, by counsel's errors and omission. The unreliable tactic had a cumulative effect that deprived petitioner of a fair trial, violating both federal and state constitutions.

IV. Did the trial court impermissibly instruct the jury to return a[n] inconsistent, ambiguous verdict[ ]; once it returned a guilty verdict on count I (1st degree premeditated murder), and count II (lesser offense of felony-murder, "second degree" murder), in addition to [the] finding of guilt on count III (felony firearm), where only one victim was murder[ed] out of [a] continuous criminal episode.  The trial court failed to cure the constitutional violations, when sentencing petitioner to a natural life on count I, life on count II, then "arbitrarily" vacating the sentence on count II, over defense objection. The court imposed a mandatory two year sentence on count III (felony firearm).  The trial court imposed sentences violates the due process and is in violation of double jeopardy clause of both federal and state constitutions.

V. Petitioner was prejudiced by the district court magistrates failure to dismiss the prosecutor's case for lack of probable cause and its evidence.

VI. The trial judge was instrumentally bias [sic] that the conduct was so unprofessional it breached the mantle of impartiality thus denying petitioner's due process rights.

VII. Petitioner's federal constitutional right to the due process of law was violated where the prosecution knowingly and intentionally presented false evidence respecting the source of "gunshot residue."

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this court's habeas corpus review of state court decisions.  Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

6

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker*, 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

## DISCUSSION

I. Procedural Default

Petitioner first raised the following claims in his motion for relief from judgment: (1) prosecutorial misconduct (one claim), (2) judicial bias; (3) improper bind over, and (4) inconsistent and ambiguous verdict. The last state court to issue a reasoned opinion addressing these claims held that "the defendant failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Poindexter*, 480 Mich. 922; 740

7

NW2d 288 (2007) (table).

The Sixth Circuit has held that denial of leave to appeal based on petitioner's failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002). Furthermore, Rule 6.508(D), constitutes an independent and adequate state ground. *Simpson v. Jones*, 238 F.399, 407 (6th Cir. 2000). Where "a state prisoner defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner's claims are therefore in part procedurally defaulted.

The Court, however, need not address the procedural default issue. While the procedural default doctrine precludes habeas relief on a defaulted claim, this procedural default doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett*, 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The Court deems it more efficient to proceed directly to the merits of Petitioner's claims.

II. Mistrial

Petitioner asserts that the trial court should have declared a mistrial because after two days of deliberating over a week long trial, the jury indicated that they were not able to come to a consensus on the murder charge. The trial court told the jurors to continue deliberating; and within twenty-four hours, the jury rendered its verdict of guilty on the murder charges. The Michigan Court of Appeals rejected Petitioner's argument regarding the necessity of a mistrial and stated as follows:

> The trial took longer than a week, and the jury spent no more than three days deliberating, in total. For the majority of the first and second days of deliberations, the jury considered the evidence without informing the trial court of any problems. Only later on the second day of deliberations did the jury first alert the trial court that it could not reach a unanimous verdict on the murder charge. This unanimity problem resolved itself less than twenty-four hours later when, in the afternoon of the third day of deliberations, the jury rendered its verdict on the murder charge. We see nothing inappropriate in the trial court's conclusion that less than two days was inadequate to consider the voluminous evidence and reach a final decision.
>
> Though Poindexter points out that the jury was forced to deliberate up to six days before Christmas, there is nothing inherently coercive about this timing in the sense that the jurors would be forced to choose between being allowed to observe the holiday and rendering an honest verdict.
>
> * * *
>
> Additionally, we note that the transcript makes it fairly apparent that Poindexter's personal insistence on a mistrial with respect to all three charges after the jury indicated it had reached a verdict on two charges was a dilatory tactic, not a response to any concerns about the jury's deliberations and the possibility of coercion. Consequently, in the absence of any factors from which we could infer that the jury was coerced by the trial court's refusal to grant a mistrial and to continue deliberations, we cannot say that the trial court abused its discretion.

*Poindexter*, 2002 WL 194794, at *4 (internal citations omitted).

This decision is neither contrary to nor an unreasonable application of Supreme Court precedent. First, to the extent Petitioner relies upon state law to support this

9

argument, he fails to state a claim for habeas relief. It is well settled that habeas relief cannot be granted for alleged violations of state law. *Estelle* v. *McGuiree*, 502 U.S. 62, 67-68 (1991). Moreover, in order for a mistrial to be warranted, Petitioner must show that there was a "manifest necessity" (i.e., a high degree of necessity) for terminating the trial deliberations before a conclusion on the merits. *Arizona* v. *Washington*, 434 U.S. 497, 505-06 (1978).

To be sure, the manifest necessity doctrine does not require a finding that the trial court had no alternative but to declare a mistrial. *Harpster v. State of Ohio*, 128 F.3d 322, 328 (6th Cir. 1997). A mistrial premised upon jury deadlock has been "long considered the classic basis for a proper mistrial." *Arizona*, 434 U.S. at 509; *see also Richardson v. United States*, 468 U.S. 317, 323-24 (1984). And reviewing courts must give considerable deference to a trial court's determination that manifest necessity warrants a mistrial, particularly in the context of a deadlocked jury. *Arizona*, 434 U.S. at 510-11. The United States Supreme Court has explained that there are "especially compelling" reasons for allowing the trial judge to exercise broad discretion in determining whether a mistrial is warranted based upon jury deadlock:

> On the one hand, if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if [the trial judge] fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently than the trial judge, there would be a danger that the latter,
>
> cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a

reviewing court.

*Id.* at 509-10.

The Supreme Court also has made clear that a trial court's failure to examine alternatives to declaring a mistrial or to make an explicit finding of manifest necessity alone does not negate the propriety of a mistrial *provided that* such a determination is supported by the record. *Id.* at 516-17. The circumstances warranting a mistrial are not present in this case. The jurors in this case were not involved in any "protracted and exhausting" deliberations, nor is there any indication in the record that the jury was overwhelmed with disharmony or would not have been able to reach a verdict within a sufficient amount of time. Therefore, habeas relief is denied on this claim.

III.  Prosecutorial Misconduct

Petitioner argues that the prosecutor engaged in misconduct by deliberately introducing inadmissible hearsay testimony for the purpose of establishing a prior assault perpetrated upon the victim by Petitioner. The Michigan Court of Appeals disagreed with this argument and stated as follows:

> [T]here is nothing in the record indicating that the prosecutor in this case acted in bad faith in attempting to introduce evidence; she was apparently simply mistaken as to the scope of the trial court's pretrial ruling and her ability to lay a proper foundation. The prosecutor's attempt to introduce evidence she legitimately believed would be accepted by the court does not constitute misconduct. In addition, considering that the trial court instructed the jury to disregard the testimony, that the statement was mentioned once and well-before deliberations, and that Lisa Summerville gave unequivocal testimony that she saw Poindexter in the house at the time of the shooting wearing bloody gloves, any error was harmless beyond a reasonable doubt.

*Poindexter,* 2002 WL 194794, at *5 (internal citations omitted).

Petitioner also asserts that the prosecutor engaged in misconduct by misstating

11

material facts.[1]  Petitioner claims that "the prosecutor [has] a duty to refrain f[ro]m false misstatement[s] of facts on the evidence." (Am. Pet. at 55). However, Petitioner fails to articulate exactly what "misstatements" were made by the prosecutor and what material facts were misrepresented.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Anger v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of*

---

[1]This prosecutorial misconduct argument is itemized as Petitioner's seventh habeas issue for review. However, within the text of Petitioner's argument in his habeas petition, he includes a few sentences with "buzz" words such as: (1) "[t]he prosecutor in its closing argument *vouched* for the expert witness;" (2) "the *failure to disclose* the truth of the relevancy of the evidence that as *favorable* to the defense was a clear error;" and (3) "[n]evertheless, the *ineptness of appellate counsel*['s] failure to raise this unpreserve[d] error on appeal constitutes *ineffective assistance of counsel.*" Aside from these, at times, incoherent statements, Petitioner has failed to show any factual or legal argument to support vouching, a *Brady* violation, ineffective assistance of counsel, or ineffective assistance of appellate counsel.

*Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams*, 376 F.3d at 528, quoting *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).

The Court finds that the decision of the Michigan Court of Appeals is neither contrary to nor an unreasonable application of Supreme Court precedent. Petitioner has failed to demonstrate that the conduct of the prosecutor in this case rose to the level of prosecutorial misconduct.[2] Also, for the reasons stated by the appellate court, habeas relief is not warranted on this claim.

## IV. Ineffective Assistance of Trial Counsel

---

[2]Petitioner states within the text of his argument regarding his ineffective assistance of counsel claim that "the prosecutor failed to disclose potentially 'exculpatory' evidence." (Am. Pet. at 37). He cites the following missing and allegedly exculpatory evidence: (1) medical technician report; (2) test/lab/report/chain of custody, regarding the gunshot residue (3) test/lab/report/chain of custody, regarding the missing/lost 'bullet' removed from the victim's body; (4) phone records; (5) fingerprint records; (6) police patrol car 'log' sheets; (7) police report; and (8) statement from 3 year old Leslie Summerville. However, that is the extent of Petitioner's argument, with no reference to the exculpatory nature of the evidence or minimally, how the evidence is favorable to Petitioner's case. Petitioner also fails to show that the prosecutor engaged in any misconduct related to this alleged missing and exculpatory evidence. Therefore, Petitioner has failed to demonstrate prosecutorial misconduct relative to this issue.

Petitioner claims that his trial attorney was deficient by: (1) failing to "appropriate motions," and enter timely objections, in pursuit of obtaining the evidence the prosecutor failed to disclose; and (2) failing to produce defense witnesses, specifically, Petitioner's mother. The only ineffective assistance of counsel claim presented to the Michigan Court of Appeals was regarding the presentation of witnesses. The appellate court did not agree with Petitioner's argument and stated as follows:

> Case law settles that failing to present a witness can constitute ineffective assistance of counsel if the failure to do so deprives the defendant of a "substantial defense." However, decisions condemning which witnesses to call and what evidence to present are often considered part of trial strategy. In this case, Poindexter is not entitled to relief because of this argument, having to demonstrate what his mother would have said had she been called as a witness at trial. All we can discern from his brief is that she might have given him an alibi, but what that alibi would have been we do not know. Without this information it is impossible to determine how her absence from trial deprived Poindexter of a substantial defense and, therefore, whether her testimony would have made any difference in the outcome of this case.

*Poindexter*, 2002 WL 194794, at *5 (internal citations omitted).

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court has set forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996).

The Sixth Circuit held that under some circumstances, the failure to interview or call a potential defense witness may amount to a violation of a criminal defendant's Sixth Amendment rights. *See, e.g.*, *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005). However, complaints of ineffective assistance of counsel based upon "uncalled witnesses" are not favored in federal habeas corpus review because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Addressing Petitioner's mother's testimony, within his amended petition, it is clear that she would not have been an alibi witness. "Petitioner's mother would have testified

15

that the police never came to her home where the petitioner w[as] residing to gather evidence for the murder." (Am. Pet. at 39). There was testimony that the police were having difficulty locating Petitioner after the shooting from which the jury may infer that he was hiding. Petitioner's reason for wanting his mother to testify was to show the jury that he was not hiding from the police because of his alleged guilt, but rather that he was at his mother's home after the shooting. Petitioner fails to show how trial counsel's decision not to call Petitioner's mother prejudiced his defense and would have led to a different result at trial.

Regarding Petitioner's claim that trial counsel failed to actively pursue alleged exculpatory evidence that the prosecutor failed to disclose, he has provided the Court with no facts or legal authority to support this blanket claim. Habeas relief is denied on Petitioner's ineffective assistance of counsel claim.

V.  Inconsistent & Ambiguous Verdict

Petitioner asserts that the trial court did not properly instruct the jury regarding its choice of verdicts by not instructing the jury that they had the option of finding Petitioner not guilty. He further argues that the sentences imposed by the trial court violated his due process rights and the double jeopardy clause under the state and federal constitutions. The Court finds that Petitioner's first claim is erroneous and his second claim is moot.

The trial court judge fully instructed the jury about all of its options relative to it choice of verdicts. (Tr., Vol. IX, at 4-5). This included the option of finding Petitioner guilty or not guilty. Therefore, Petitioner's claim about the trial court's failure to inform the jury that it had a choice to find Petitioner not guilty is not accurate. Secondly, Petitioner claims that the sentences imposed by the trial court infringed upon his due process rights and

violated the double jeopardy clause. This argument is moot since the trial court immediately after sentencing Petitioner to life imprisonment for second degree murder vacated the conviction and the sentence. Therefore, the only convictions and sentences which remain are for those for first-degree murder and felony-firearm, and there is no inconsistency between these two convictions. Habeas relief is denied as to this claim.

VI. Improper Bindover

Petitioner claims that the trial court erred in binding him over for trial following the preliminary examination because insufficient evidence was presented to support the charges. A criminal defendant has no constitutional right to a preliminary hearing. *Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *Dillard v. Bomar*, 8 342 F.2d 789, 790 (6th Cir. 1965). Thus, Petitioner's claim that the bind over was improper raises a matter of state law and cannot form a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. at 67 ("[F]ederal habeas corpus review does not lie for errors of state law.") (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). Habeas relief is, therefore, not warranted on this claim.

VII. Judicial Bias

A judge's judicial rulings almost never support a finding of bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Opinions formed by a judge on the basis of facts introduced during current or prior proceedings do not support a bias or partiality motion unless the judge's conduct reveals such deep-seated favoritism or antagonism that fair judgment is impossible. *Id.*, 510 U.S. at 555. The test is whether "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).

The Court has reviewed Petitioner's arguments in light of the record and the appropriate standard. Nothing in the record suggests that the trial court was biased against Petitioner. Petitioner makes generalized and blanket statements in his habeas petition to espouse his position; however, he provides no factual or legal support to substantiate his claim. Although Petitioner makes some citations to the record, the cited transcript testimony does not support his judicial bias argument. Habeas relief is, therefore, denied on this claim.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 30, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager